UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SCOTT L. HEAGNEY,

    *Plaintiff*,

v.

PAMELA BONDI,[1]

    *Defendant*.

Civil Action No. 24-2592 (SLS)

Judge Sparkle L. Sooknanan

## MEMORANDUM OPINION

    Scott L. Heagney retired from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in February 2022. Over eight months later, ATF made an adverse notation in his official personnel file. He sued to challenge that notation under various statutes, including 5 U.S.C. § 3322. The Court previously granted in part and denied in part a motion to dismiss filed by the Defendant, dismissing Mr. Heagney's Section 3322 claims in part because it found that statutory provision inapplicable. Mr. Heagney now moves for partial reconsideration, and this time, the Government concedes that ATF entered the relevant notation pursuant to Section 3322. In light of this new information, the Court finds that Mr. Heagney has plausibly alleged a harmful procedural error by pointing to statutory deadlines in Section 3322 that he claims ATF failed to meet. But the Court's dismissal of the other Section 3322 claims stands. The Court therefore grants reconsideration in part and denies it in part. Mr. Heagney may move forward with his procedural error claim but not his claim that ATF acted "not in accordance with law" or his request for a declaratory judgment.

---

[1] Although the Plaintiff named former Attorney General Merrick B. Garland as the Defendant in the Complaint, current Attorney General Pamela Bondi is "automatically substituted as a party" in his place pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### A.  Factual Background

The Court previously reported the facts of this case, *see Heagney v. Bondi*, No. 24-cv-2592, 2025 WL 1496315, at *2–4 (D.D.C. May 22, 2025), but it will provide some necessary facts here, accepting the Plaintiff's allegations as true, *see Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023).

Mr. Heagney is a former federal employee who served in various positions at ATF until his retirement. *See* Compl. ¶¶ 7, 20, ECF No. 1. On October 18, 2018, Special Agent Daniel Meade reported that his firearm had been stolen, *id.* ¶ 22, which resulted in two investigations. Sometime between October 30 and November 9, 2018, the ATF Internal Affairs Division opened an investigation into the theft of Mr. Meade's firearm. *Id.* ¶ 25. And at some point before April 5, 2021, DOJ's OIG also began investigating the incident. *See id.* ¶ 35.

On November 19, 2021, the OIG "complete[d] its work and transmit[ted] a Report of Investigation . . . to ATF of some 1,956 pages." *Id.* ¶ 38. At this point, the "Synopsis" page of the report said "CLOSED." *Id.* ¶ 38.1. "No further investigation was conducted by DOJ of related matters." *Id.* ¶ 38.2. "Nor was any further investigation of related matters conducted by staff of the ATF Internal Affairs Division after issuance of the DOJ OIG report." *Id.* ¶ 38.4.

On December 16, 2021, Mr. Heagney gave notice that he planned to retire in February 2022. *Id.* ¶ 40. His retirement became effective on February 21, 2022. *Id.* ¶ 41. Several months later, on May 26, 2022, ATF internally transmitted the OIG report to Richard Coes, the Chair of the ATF Professional Review Board, and Thomas Chittum, the Assistant Director for Field Operations. *Id.* ¶ 42. And on September 8, 2022, the ATF Professional Review Board met to review the OIG report. *Id.* ¶ 44. On October 24, 2022, the Board notified Mr. Heagney that it intended to make a permanent notation in his official personnel file. *See id.* ¶ 45. Finally, on June 14, 2023,

Mr. Heagney was notified that his opposition to the notation had been considered but that ATF still "decided to proceed with permanently (adversely) notating" his file. *Id.* ¶ 46.

### B.  Procedural Background

Mr. Heagney filed this lawsuit on September 9, 2024, alleging violations of the Civil Service Reform Act, Title VII, and the Declaratory Judgment Act. *See* Compl. The Defendant moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot. Dismiss at 1, ECF No. 10; *see also* Pl.'s Opp'n Mot. Dismiss, ECF No. 14; Def.'s Reply Mot. Dismiss, ECF No. 16. And the Court dismissed all of Mr. Heagney's claims except his Title VII retaliation claims. *See Heagney*, 2025 WL 1496315, at *15. Mr. Heagney then filed a motion for partial reconsideration of his claims grounded in 5 U.S.C. § 3322. *See* Mot. Reconsideration, ECF No. 21. This motion is fully briefed and ripe for review. *See* Pl.'s Suppl. Mot. Reconsideration, ECF No. 23; Def.'s Opp'n Mot. Reconsideration, ECF No. 27; Pl.'s Reply Mot. Reconsideration, ECF No. 28; Pl.'s Suppl. Br., ECF No. 29; Def.'s Suppl. Br., ECF No. 30.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 54(b) provides that 'any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims[.]'" *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009) (quoting Fed. R. Civ. P. 54(b)). A district court may thus "reconsider an interlocutory order as justice requires." *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (cleaned up). "To determine whether justice requires reconsideration of an interlocutory decision, courts look to whether the moving party has demonstrated (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *United States v. All Assets Held at Bank Julius Baer & Co.*, 502 F. Supp. 3d 91, 95 (D.D.C. 2020) (cleaned up). But "[e]ven where none of

3

these three factors is present, 'the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so.'" *Id.* (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005)).

## DISCUSSION

Having carefully considered the Parties' submissions, including the Defendant's new representation that the permanent notation at issue was entered pursuant to Section 3322, the Court grants reconsideration in part and denies it in part. The new information from the Government does not alter the Court's dismissal of the claim that ATF acted "not in accordance with law." But on reconsideration, the Court concludes that Mr. Heagney's claim that ATF committed "harmful procedural error" by missing certain statutory deadlines survives at this stage, though it declines to exercise its discretion to declare the scope of investigations to which Section 3322 applies.

### A.  Accordance with Law

Mr. Heagney's first claim under Section 3322 is that the notation "was not in accordance with law." Compl. ¶ 66. The Court previously explained why it presumed Mr. Heagney to be bringing this claim under 5 U.S.C. § 7701 despite his failure to identify the source of law in his Complaint or briefing. *See Heagney*, 2025 WL 1496315, at *5. And Mr. Heagney has since confirmed that the Court was right to make this logical leap. *See* Pl.'s Suppl. Br. at 1, ECF No. 29 ("[H]ere the focus is on the phrase as used under federal civil service law: 5 U.S.C. § 7701(c)(2)(C)."). The question, then, is whether Mr. Heagney plausibly alleged that ATF acted "not in accordance with law" under 5 U.S.C. § 7701. The Court continues to conclude that he did not.

Mr. Heagney argues that 5 U.S.C. § 3322 *permits* agencies to make a notation in an employee's file in certain circumstances. *See* Compl. at 1 ("5 U.S.C. § 3322 allows for such a notation <u>if</u> an employee departs while subject of an ongoing Office of Inspector General 'personnel

4

investigation.'"); Pl.'s Opp'n Mot. Dismiss at 1 ("§ 3322 allows for a permanent notation of misconduct to the personnel file of an employee who leaves during an *ongoing* Office of Inspector General (OIG) investigation."); *id.* at 12 ("5 U.S.C. § 3322 first provides that a permanent notation may be made in an employee's official personnel file within 40 days after the resolution of a 'personnel investigation' if the subject employee resigns prior to 'resolution of such investigation[.]'"); Pl.'s Suppl. Br. at 7 ("Congress amended those laws with 5 U.S.C. § 3322, setting out in substantial detail the circumstances under which a federal agency can adversely notate a *former* employee's files[.]"). And if this were the case, he would have a colorable argument that the statute impliedly prohibits making such a notation outside of those enumerated circumstances. *See, e.g.*, *Halverson v. Slater*, 129 F.3d 180, 185 (D.C. Cir. 1997) ("That section 2104(a) authorizes delegations to Coast Guard officials only cannot be disregarded. According to the *expressio unius* canon, the Congress, in drafting section 2104(a) this way, intended to exclude delegations to non-Coast Guard officials.").

But 5 U.S.C. § 3322 does no such thing; it instead *requires* agencies to make a notation when certain conditions are met. *See id.* § 3322(a). The text could not be clearer:

> With respect to any employee occupying a position in the competitive service or the excepted service who is the subject of a personnel investigation and resigns from Government employment prior to the resolution of such investigation, the head of the agency from which such employee so resigns *shall*, if an adverse finding was made with respect to such employee pursuant to such investigation, make a permanent notation in the employee's official personnel record file.

*Id.* (emphasis added). Mr. Heagney is therefore hard-pressed to argue that this statutory provision prohibits the entry of a notation outside of the enumerated circumstances. *See FTC v. Tarriff*, 584 F.3d 1088, 1090–91 (D.C. Cir. 2009) ("We know of no usage, nor do appellants bring forward any, that suggests that the use of 'shall' mandating one act implies a corresponding 'shall not' forbidding other acts not inconsistent with the mandated performance.").

5

To be clear, the Court takes no position on whether agencies may enter notations into former employees' files outside of the circumstances outlined in 5 U.S.C. § 3322. It stands to reason that various laws may limit such discretion. *See* Pl.'s Mot. Reconsideration at 9 ("After all, 18 U.S.C. § 1519 makes some alterations of records punishable by up to 20 years' imprisonment."). Indeed, in its prior opinion, the Court allowed the Plaintiff to move forward with his claims that ATF unlawfully entered the notation in retaliation for protected activity. *See Heagney*, 2025 WL 1496315, at *7–13. But "it is not for the court to canvass the United States Constitution and the entirety of the U.S. Code in order to piece together [the plaintiff's] complaint." *Hughes v. Goedert*, No. 17-cv-174, 2017 U.S. Dist. LEXIS 85174, at *4 (D. Nev. May 31, 2017).

Nor is the Court saying that an agency may enter notations without regard for the procedural requirements in 5 U.S.C. § 3322 when it acts under the circumstances described in the Section. Subsection 3322(a) identifies the conditions that trigger an agency's obligation to enter a notation in an employee's official personnel file. *See id.* And the rest of the provision goes on to outline how the agency must fulfill that obligation. *See id.* § 3322(a) ("The head shall make such notation not later than 40 days after the date of the resolution of such investigation."); *id.* § 3322(b) (outlining various things that "the agency head shall" do "[p]rior to making a permanent notation in an employee's official personnel record file under subsection (a)[.]"); *id.* § 3322(c)–(d) (describing the administrative appellate process). This means that the procedural requirements apply by transitivity when the triggering conditions are met. But Mr. Heagney's first claim is not about these procedural requirements—it is about the very existence of the notation in his file. *See* Compl. ¶ 66 ("First, to reverse the notation to file action on the basis that it was not in accordance with law."). He therefore cannot rely on these requirements for this claim.

6

At bottom, Mr. Heagney seems to believe that the Government acts "not in accordance with law" when it cannot point to a statute permitting it to take a certain action. *See* Pl.'s Suppl. Br. To the contrary, a plaintiff must identify some law that has been violated to allege that the Government acted "not in accordance with law." This aligns with the plain meaning of the statutory text. *See Webster's Third New International Dictionary Unabridged* 12 (1993) (defining "accordance" to mean "agreement; accord"); *American Heritage Dictionary of the English Language* 9 (1976) (defining "accordance" to mean "[a]greement; conformity"); *Random House Dictionary of the English Language* 9 (unabridged ed. 1973) (same); *Webster's Ninth New Collegiate Dictionary* 50 (1990) (defining "accordance" to mean "[a]greement, [c]onformity," such as "in [accordance] with a rule"). And it is consistent with how courts have treated the phrase in various contexts. *See Torres v. Del Toro*, No. 21-cv-306, 2022 U.S. Dist. LEXIS 182580, at *12 (D.D.C. Sept. 27, 2022) ("[W]hen the government violates a statutory mandate, it has definitionally failed to act in accordance with law and its action should be set aside."); *Ovintiv USA, Inc. v. Haaland*, 665 F. Supp. 3d 59, 72 (D.D.C. 2023) ("[A]n agency action is 'not in accordance with law' if it violates some extant federal statute or regulation." (cleaned up)); *E. Band of Cherokee Indians v. U.S. Dep't of the Interior*, 534 F. Supp. 3d 86, 97 (D.D.C. 2021) (same); *S. Utah Wilderness All. v. U. S. Bureau of Land Mgmt.*, 551 F. Supp. 3d 1226, 1240 (D. Utah 2021) ("Courts have repeatedly and consistently interpreted 'not in accordance with law' to mean that there is no right to sue for a violation of the APA in the absence of a relevant statute whose violation forms the legal basis for the complaint. Thus, the plaintiff must identify a substantive statute or regulation that the agency action had transgressed and establish that the statute or regulation applies to the United States." (cleaned up)); *Preferred Risk Mut. Ins. Co. v. United States*, 86 F.3d 789, 792 (8th Cir. 1996) (same); *Gebert v. U.S. Dep't of State*,

7

No. 22-cv-2939, 2024 WL 1328439, at *9 (D.D.C. Mar. 27, 2024) (dismissing the claim that an agency's "decision to terminate [the plaintiff's] health insurance [was] 'not in accordance with law'" because the plaintiff "identifie[d] no law requiring the Department to retain [the plaintiff's] health insurance").

Mr. Heagney cannot identify a single case ever saying that the Government acts "not in accordance with law" when it does not identify a statute permitting the challenged action. He instead relies on cases discussing "whether a statute confers an individually enforceable right under § 1983," *Medina v. Planned Parenthood S. Atlantic*, 145 S. Ct. 2219, 2229 (2025), whether an agency acted in excess of statutory authority, *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 143 F. 4th 518, 531 (D.C. Cir. 2025), whether an agency action is traceable to the statute authorizing the action, *FEC v. Cruz*, 596 U.S. 289, 301 (2022), whether an agency "lacks the statutory authority to engage in [certain] rulemaking," *Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 31 (D.D.C. 2014), and whether an agency rule was "within the power granted to it by the Clean Air Act," *W. Va. v. EPA*, 597 U.S. 697, 706 (2022). Notably missing from these cases is any mention of an agency acting "not in accordance with law"—indeed, the only case he cites mentioning this phrase is *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), which just says that this language from the Administrative Procedure Act codifies the "unremarkable . . . proposition . . . that courts decide legal questions by applying their own judgment," *id.* at 391–92.

Mr. Heagney has therefore failed to demonstrate "a clear error in the first order" in the Court's reasoning for dismissing this claim. *All Assets*, 502 F. Supp. 3d at 95 (cleaned up). Nor has he identified "an intervening change in the law" or "the discovery of new evidence not previously available." *Id.* (cleaned up). The Court thus declines to reconsider the dismissal of his first claim.

8

**B.      Procedural Error**

Mr. Heagney's second claim is that the notation "was the result of harmful procedural error," Compl. ¶ 67, presumably in violation of 5 U.S.C. § 7701(c)(2)(A). *See also Cornelius v. Nutt*, 472 U.S. 648, 659 (1985) ("The agency's 'procedures' considered . . . in applying § 7701(c)(2)(A) include . . . procedures required by statute, rule, or regulation[.]"). He identifies two types of procedural errors based on 5 U.S.C. § 3322. First, he alleges that ATF made the notation "even though [he] did not retire until months *after* the personnel investigation concluded." Compl. ¶ 67. But nothing in 5 U.S.C. § 3322 prohibits making a notation outside of the circumstances contemplated in Subsection 3322(a). *See supra*, at 4–8. Second, he alleges that the Defendant failed to meet two deadlines set by 5 U.S.C. § 3322. *See* Compl. ¶¶ 67.1, 67.2. The Court previously declined to apply these statutory deadlines because it saw nothing in the Complaint to suggest ATF made a permanent notation because of an "adverse finding . . . made with respect to [Mr. Heagney] pursuant to [an] investigation" that was ongoing at the time of Mr. Heagney's retirement. 5 U.S.C. § 3322(a); *see Heagney*, 2025 WL 1496315, at *5–6. And the Court maintains that it could not have concluded anything else—indeed, Mr. Heagney himself argues that "there was no personnel investigation open at the time [he] retired in February 2022." Pl.'s Suppl. Br. at 8. But the Defendant has conceded in response to Mr. Heagney's motion for reconsideration that ATF "made the challenged notation pursuant to 5 U.S.C. § 3322." Def.'s Opp'n Mot. Reconsideration at 1. So the Court will assess whether Mr. Heagney plausibly claimed a violation of the deadlines provided in Section 3322.

*First*, Mr. Heagney alleges that ATF "did not meet the five-day deadline to provide [Mr.] Heagney with the findings of the investigation from the date the investigation was resolved." Compl. ¶ 67.1. Subsection 3322(b) provides that "[p]rior to making a permanent notation in an

9

employee's official personnel record file under subsection (a), the head of the agency shall . . . notify the employee in writing within 5 days of the resolution of the investigation and provide such employee a copy of the adverse finding and any supporting documentation[.]" 5 U.S.C. § 3322(b)(1). Mr. Heagney alleges that the ATF Professional Review Board notified him of its "intent to make a permanent notation to his file based on the conclusions of the DOJ OIG ROI" on October 24, 2022. Compl. ¶ 45. So whether ATF satisfied this deadline turns on whether the OIG investigation resolved before October 19, 2022. *See also* Def.'s Reply Mot. Dismiss at 7.

Mr. Heagney seems to have clearly alleged that the OIG investigation resolved well before October 19, 2022. *See* Compl. ¶ 38 ("DOJ OIG complete[d] its work and transmit[ted] a Report of Investigation . . . to ATF of some 1,956 pages" on November 19, 2021."); *id.* ¶ 38.1 ("The 'Synopsis' page of the ROI says 'CLOSED' in the field for 'STATUS.'"); *id.* ¶ 38.2 ("No further investigation was conducted by DOJ of related matters."); *id.* ¶ 38.3 ("This marked the resolution of the 'personnel investigation' of Plaintiff Heagney (and other agents involved in related events)."); *id.* ¶ 38.4 ("Nor was any further investigation or related matters conducted by staff of the ATF Internal Affairs Division after issuance of the DOJ OIG report."). Even the Defendant appeared to concede as much in the motion to dismiss. *See* Def.'s Mot. Dismiss at 7 ("The Inspector General investigation ended on November 19, 2021[.]"). Indeed, the Defendant spends much of the motion to dismiss arguing that Mr. Heagney retired during an ongoing investigation because the phrase "personnel investigation" includes the Internal Affairs investigation. *See id.* ("Because the term 'personnel investigation' covers [the] Internal Affairs investigation, Heagney's argument that no 'personnel investigation,' as Section 3322[] uses that term, was ongoing at the time that he retired thus demonstrably is incorrect."). This strategy would

make little sense if the Defendant believed the OIG investigation had not resolved before Mr. Heagney's retirement.

      The Defendant's motion to dismiss instead argued that the relevant date was the resolution date of the Internal Affairs investigation. *See id.* ("[Mr. Heagney's procedural error] arguments presuppose that the Inspector General investigation is the only relevant 'personnel investigation' under Section 3322 and that the Internal Investigation did not count. That is incorrect—the Internal Affairs investigation counts."); *id.* ("[T]he Internal Affairs investigation . . . remained ongoing for long after the Inspector General investigation ended."). But this argument is mistaken because the deadline applies to "the investigation" that causes the agency head "to mak[e] a permanent notation in an employee's official personnel record file under subsection (a)"—that is, the investigation "pursuant to" which "an adverse finding was made." 5 U.S.C. § 3322. And Mr. Heagney alleged that ATF's adverse finding was made pursuant to the OIG investigation. *See* Compl. ¶ 45 ("The PRB issues notice to [Mr.] Heagney of the intent to make a permanent notation to his file based on the conclusions of the DOJ OIG ROI."). So the resolution date of the Internal Affairs investigation is neither here nor there.

      Perhaps realizing this mistake, the Defendant's reply brief advanced a new line of argument that Mr. Heagney did not "plausibly allege that ATF resolved the investigation before October 19, 2024." Def.'s Reply Mot. Dismiss at 7. The argument seems to be that the OIG investigation did not resolve on November 19, 2021, because the ATF Professional Review Board did not meet to review the findings of the OIG investigation until September 8, 2022. *See id*. ("While [Mr. Heagney] alleges that the Board met on September 8, 2022, he does not allege that the Board resolved the investigation that same day." (citing Compl. ¶ 44)). The Court need not consider this argument raised only in the Defendant's reply brief. *See Salini Construttori S.PA. v.*

11

*Kingdom of Morocco*, 233 F. Supp. 3d 190, 200 (D.D.C. 2017) ("If the movant raises arguments for the first time in his reply to the non-movant's opposition, the [district] court will either ignore those arguments in resolving the motion or provide the non-movant an opportunity to respond to those arguments by granting leave to file a sur-reply." (cleaned up)). But the argument does not carry the day in any event.

Courts routinely treat investigations as resolved once findings have been made. *See, e.g.*, *Truesdale v. District of Columbia*, No. 21-cv-315, 2022 U.S. Dist. LEXIS 58695, at *2 (D.D.C. Mar. 30, 2022) ("The investigation was resolved in June 2019 with a finding of 'no preponderance/no discipline.'"); *Libertarian Party of Conn. v. Merrill*, No. 15-cv-1851, 2016 U.S. Dist. LEXIS 194740, at *18 (D. Conn. Jan. 26, 2016) ("The third investigation was resolved with no finding of fraud[.]"); *Yessin v. City of Tampa*, No. 13-cv-1252, 2015 U.S. Dist. LEXIS 22748, at *5 (M.D. Fla. Feb. 25, 2015) ("[T]he internal investigation was resolved with a finding that the allegations . . . were 'UNFOUNDED: EXONERATED' and 'UNFOUNDED: NOT INVOLVED[.]'"), *rev'd in part on different grounds*, 613 F. App'x 906 (11th Cir. 2015) (per curiam). And the text of 5 U.S.C. § 3322 reinforces this reading. Subsection 3322(a) leaves the agency head with no discretion to determine the proper sanction for an adverse finding, demanding that she make a notation in the employee's file after an adverse finding. *See* 5 U.S.C. § 3322(a). So it would make little sense to hold that an investigation does not resolve until a sanctions decision has been made. *See, e.g.*, *Doe v. Rector & Visitors*, No. 18-cv-38, 2019 U.S. Dist. LEXIS 108990, at *6 (W.D. Va. June 28, 2019) ("Typically, the period from commencement of an investigation through resolution (finding and sanction, if any) will not exceed sixty (60) calendar days." (cleaned up)). And Subsection 3322(b) requires only that the agency head provide the employee with "a copy of *the adverse finding* and any supporting

12

documentation" after the resolution of an investigation, 5 U.S.C. § 3322(b) (emphasis added), further suggesting that the adverse finding is what resolves an investigation. Mr. Heagney alleged that the OIG investigation resulted in findings on November 19, 2021. *See* Compl. ¶ 39 ("<u>November 20, 2021 until early September 2022</u>—ATF sits on the DOJ OIG ROI, taking no formal action in response to *its findings*." (emphasis added)). He therefore plausibly alleged that ATF missed its five-day deadline to notify him of the findings.

Perhaps the Defendant believes there is some third path. The reply brief acknowledges that "[t]here is no dispute" that the OIG investigation "was over by October 2022," Def.'s Reply Mot. Dismiss at 6, the month in which the ATF Professional Review Board notified Mr. Heagney of its intent to enter a permanent notation, *see* Compl. ¶ 45. But the Defendant disclaims the argument that an investigation resolves on "the date [an] agency proposes a notation" without explaining what would mark the resolution of the investigation. Def.'s Reply Mot. Dismiss at 7. This makes it impossible for the Court to assess this reading of the statute. The core disagreement in the reply brief is that Mr. Heagney needed to allege not only that the ATF Professional Review Board *met* on September 8, 2022, but also that it "*resolved* the investigation that same day" or some day before October 19, 2022. *Id.* (emphasis added). But Mr. Heagney did allege that the OIG investigation reached a resolution—even as far back as November 19, 2021. *See* Compl. ¶ 38.3 ("This marked the resolution of the 'personnel investigation' of Plaintiff Heagney[.]"). If the Defendant is looking for a more specific allegation, the Court is at a loss for what that might be.

*Second*, Mr. Heagney alleges that "the statutory [forty]-day deadline for making the notation to file ran in December 2021," long before the notation was proposed in October 2022. Compl. ¶ 67.2. Subsection 3322(a) provides that an agency head "shall . . . make a permanent notation in [an] employee's official personnel record" when an employee "who is the subject of a

personnel investigation" resigns "prior to the resolution of such investigation" and "an adverse finding was made with respect to such employee pursuant to such investigation[.]" 5 U.S.C. § 3322(a). It then demands that the agency head "make such notation not later than 40 days after the date of the resolution of such investigation." *Id.* The Defendant has conceded that ATF "did not make the notation within forty days of the investigation's resolution[.]" Def.'s Reply Mot. Dismiss at 8; *see also id.* at 1 ("ATF did not make the notation within forty days of the investigation's resolution, as Section 3322(a) specifies[.]"). Mr. Heagney has thus plausibly alleged that ATF also missed this deadline.

The Defendant tries to resist these conclusions by arguing (1) that "the statute's deadlines are not mandatory," Def.'s Reply Mot. Dismiss at 8, and (2) that these procedural errors were harmless, *id.* at 9–10. But these arguments were advanced for the first time in the Defendant's reply brief—giving the Plaintiff no chance to respond—so the Court need not consider them. *See Salini Construttori S.P.A.*, 233 F. Supp. 3d at 200. The Defendant anticipated this problem and claimed that the argument that the deadlines were not mandatory "fall[s] within the scope of the matters [that Mr. Heagney] raised in opposition" because Mr. Heagney argued that ATF violated Section 3322 even under its own construction of the statute. Def.'s Reply Mot. Dismiss at 8 n.3 (quoting *Crummey v. Soc. Sec. Admin.*, 794 F. Supp. 2d 46, 63 (D.D.C. 2011)). But Mr. Heagney merely argued that ATF would have still missed its five- and forty-day deadlines even if the ATF Professional Review Board's September 8, 2022, meeting extended the length of the personnel investigation. *See* Pl.'s Opp'n Mot. Dismiss at 19 ("Thus, even if we accept ATF's stretch to count the PRB toward a 'personnel investigation,' it did not notify [Mr.] Heagney and turn over documents in the five-day deadline[.]"); *id.* ("The same stretched timeline (investigation completed by September 8, 2022; notation proposed over 45 days later, on October 24, 2022) also

14

would violate § 3322(a)'s deadline of completing the notation to file 'not later than 40 days after the date of the resolution of such investigation.'"). He never raised the doctrines invoked by the Defendant in reply, which address when deadlines should be treated as mandatory, *see Transp. Div. of Int'l Ass'n of Sheet Metal Workers v. Fed. R.R. Admin.*, 40 F.4th 646, 665 (D.C. Cir. 2022), and when a procedural error is harmful, *see Dep't of Treasury v. Fed. Lab. Rels. Auth.*, 873 F.2d 1467, 1470 n.4 (D.C. Cir. 1989). The Defendants' arguments therefore do not "fall within the scope of the matters [Mr. Heagney] raised in opposition" but instead "expand the scope of the issues presented[.]" *Anand v. United States HHS*, No. 21-cv-1635, 2022 U.S. Dist. LEXIS 239386, at *3 (D.D.C. Nov. 15, 2022).

Nor do the arguments persuade the Court on their own terms. The Defendant first cites a line of cases holding that statutory deadlines need not be treated as mandatory when the "statute does not specify a consequence for noncompliance with statutory timing provisions[.]" Def.'s Reply Mot. Dismiss at 8 (quoting *Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail, and Transp. Workers v. Fed. R.R. Admin.*, 10 F.4th 869, 874 (D.C. Cir. 2021)) (collecting cases); *see, e.g.*, *Gottlieb v. Pena*, 41 F.3d 730, 733 (D.C. Cir. 1994) ("It is well settled . . . that where Congress has placed an agency under a legal obligation to render a decision within a stated time period but has not set forth the consequences of exceeding that period, ordinarily the time period is directory rather than mandatory, and an agency will not lose jurisdiction over the matter upon expiration of that period." (cleaned up)). And the Defendant argues that "Section 3322 does not specify a consequence for noncompliance with any of its deadlines." Def.'s Reply Mot. Dismiss at 8.

But that is not correct. Subsection 3322(c) entitles an employee to appeal an agency head's decision to make a permanent notation under Subsection 3322(a) to the Merit Systems Protection

15

Board under Section 7701. *See* 5 U.S.C. § 3322(c). Section 7701 in turn provides that an agency's decision "may not be sustained" if an employee "shows harmful error in the application of the agency's procedures in arriving at such decision[.]" 5 U.S.C. § 7701(c)(2)(A). "The agency's 'procedures' considered . . . in applying § 7701(c)(2)(A) include . . . procedures required by statute, rule, or regulation[.]" *Cornelius*, 472 U.S. at 659. And statutory deadlines are commonly treated as being procedural in nature. *See, e.g.*, *N.W. v. District of Columbia*, 253 F. Supp. 3d 5, 16 (D.D.C. 2017) ("Missed deadlines present the classic example of a procedural violation of the IDEA."). An employee may therefore win before the Merit Systems Protection Board by showing that an agency head missed a deadline created by Section 3322. And Subsection 3322(d)(3) spells out the consequences in no uncertain terms: "If the employee is the prevailing party on appeal, not later than 2 weeks after the date that the Board issues the appeal decision, the head of the agency shall remove . . . the notation of an adverse finding made under subsection (a) from the employee's official personnel record file." 5 U.S.C. § 3322(d)(3). So Section 3322's deadlines are mandatory.

        The Defendant next argues that missing the forty-day deadline was harmless. *See* Def.'s Reply Mot. Dismiss at 9–10. This matters because Section 7701 only allows the Merit Systems Protection Board to find for an employee because of procedural error if that error is "harmful." 5 U.S.C. § 7701(c)(2)(A). Harmful error is defined by regulation to mean an "[e]rror by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error." 5 C.F.R. § 1201.4(r). And this definition has been accepted by at least one court applying Section 7701. *See Stanley v. Dep't of Just.*, No. 2022-2110, 2023 WL 8868094, at *2 (Fed. Cir. Dec. 22, 2023). As the Defendant sees it, Mr. Heagney still received notice of the proposed notation and had an opportunity to respond to the proposal before the notation was made, so he was not harmed by the

delay. *See* Def.'s Reply Mot. Dismiss at 9. But this misses the forest for the trees. The whole thrust of Mr. Heagney's Complaint is that ATF made the permanent notation in retaliation for his protected activity, including his filing of a Title VII suit in federal district court, which occurred in August 2022. *See* Compl. ¶ 43; *see also Heagney*, 2025 WL 1496315, at *11. The Court previously explained that Mr. Heagney plausibly alleged that the OIG investigation resolved on November 19, 2021. *See supra*, at 10–11. This means that ATF's more than six-month delay plausibly changed the outcome of its decision by allowing it to respond to the Title VII suit.

For all these reasons, Mr. Heagney has plausibly alleged a violation of the deadlines provided in Section 3322. This claim survives the Defendant's motion to dismiss.

### C.    Declaratory Judgment Act

Finally, Mr. Heagney asks the Court to "rely on the Declaratory Judgment Act . . . to rule that 5 U.S.C. § 3322 does not include within the phrase 'personnel investigation' an investigation conducted by an agency's internal affairs staff, nor an agency's Professional Review Board, and instead only applies to an Inspector General (OIG) investigation." Compl. ¶ 72. But providing this declaration would not "finally settle the controversy between the parties." *Hanes Corp. v. Millard*, 531 F.2d 585, 591 n.4 (D.C. Cir. 1976). As to the claim that ATF acted not in accordance with law, the Court has explained that "Section 3322 does not set the bounds for when an agency may place a permanent notation" in a former employee's file. *Heagney*, 2025 WL 1496315, at *7. And as to the claim that ATF committed procedural error by missing the deadlines, the Court has explained that the OIG investigation is the only investigation that matters. *See supra*, at 11. This is because Subsection 3322(a) requires an agency head to make a notation when an employee resigns "prior to the resolution of [an] investigation" "if an adverse finding was made with respect to such employee pursuant to such investigation." 5 U.S.C. § 3322(a). Mr. Heagney alleged that the ATF

17

Professional Review Board "issue[d] notice to [him] of the intent to make a permanent notation to his file based on the conclusions of the DOJ OIG ROI." Compl. ¶ 45. So whether Section 3322 applies to the Internal Affairs investigation is irrelevant. The Court does not understand the Defendant to be arguing that the ATF Professional Review Board meeting constituted its own investigation separate and apart from the OIG investigation. *See* Def.'s Reply Mot. Dismiss at 7. But to the extent that is the Defendant's argument, whether Section 3322 applies to the Board's investigation is also irrelevant because the notation was made due to the OIG investigation's findings, *see* Compl. ¶ 45. The Court therefore continues to decline to exercise its jurisdiction over this request for a declaratory judgment. *See Heagney*, 2025 WL 1496315, at *6–7.

## CONCLUSION

For the foregoing reasons, the Court grants Mr. Heagney's motion for partial reconsideration, ECF No. 21, as to Claim 2 but denies his motion as to Claims 1 and 7.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date: August 14, 2025